OPINION
{¶ 1} Defendant-Appellant William Williams appeals his conviction for illegal manufacture of drugs. For the following reasons we affirm the judgment of the trial court.
 {¶ 2} On September 30, 2003 the Miami County Grand Jury indicted William Williams, Howard Brown, Donald Mullins, and Matthew Cottrell for illegal manufacture of drugs and conspiracy to illegal manufacture of drugs. The indictments stem from a Miami County Sheriff's Department investigation revealing that the four were engaged in the manufacture of methamphetamine in Miami and Shelby Counties from September 2002 until July 2003.
 {¶ 3} Mullins and Cottrell entered into plea agreements with the State. Both agreed to enter pleas and to testify truthfully at Williams' trial. In exchange, the State promised not to object to either of them receiving probation.
 {¶ 4} On the first day of trial, Williams made a motion in limine to exclude testimony that he had been incarcerated from September 2002 until March 2003. The trial court granted the motion. The trial court also dismissed the conspiracy charge because the State failed to allege an overt act.
 {¶ 5} The State offered evidence that every couple of weeks Williams gave Cottrell or Mullins money and told them what ingredients to buy from local stores. The ingredients were usually taken directly to Mullins' abandoned property where Williams and Brown used them to manufacture methamphetamine. When they were finished, they would burn the waste on Cottrell's parents' property. Law enforcement officers found evidence of methamphetamine manufacture at both locations.
 {¶ 6} During jury deliberations, the jury asked to see a transcript of the trial. The trial court and both attorneys discussed the request in chambers and agreed that the request could not be granted. Instead, the court reminded the jury to rely on their collective memories of the testimony. The jury found Williams guilty of illegal manufacture of drugs, and the trial court sentenced him to six years in prison. Williams now appeals.
 {¶ 7} Williams' first assignment of error:
 {¶ 8} "The trial court erred as a matter of law when it answered a question of the jury outside the presence or knowledge of the appellant and erred when it refused the jury's request to review the transcript."
 {¶ 9} In his first assignment of error, Williams presents two arguments. First, he insists that he was denied a fair trial when the judge answered a jury question outside of his presence and without his knowledge. Second, he claims that the trial court erred in denying the jury's request to see a trial transcript during deliberations. We find that he is wrong in both regards.
 {¶ 10} The Ohio Supreme Court has recognized that a defendant has a Fourteenth Amendment due process right to be present at every critical stage of his trial. State v. Campbell (2000),90 Ohio St.3d 320, 346, 738 N.E.2d 1178, citing Snyder v.Massachusetts (1934), 291 U.S. 97, 54 S.Ct. 330. "The question is whether `his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" Id., citing Snyder, supra, at 105-6. The Court concluded that because the answering of a jury question is not a critical stage of trial, a defendant has no right to be present. Id., citation omitted. Here, the question concerned the availability of the trial transcript to the jury, and Williams' counsel was involved in discussing the appropriate response. Williams' presence would have added nothing "to the fullness of his opportunity to defend" himself.
 {¶ 11} As to the transcript, we review this refusal under an abuse of discretion standard. State v. Carter,72 Ohio St.3d 545, 560, 1995-Ohio-104, citing State v. Berry (1971),25 Ohio St.2d 255, 267 N.E.2d 775, paragraph four of the syllabus ("After jurors retire to deliberate, upon request from the jury, a court in the exercise of sound discretion may cause to be read all or part of the testimony of any witness . . ."), additional citation omitted. In the Carter case the Court found that the trial court did not abuse its discretion in refusing to provide a written transcript of the testimony of one of the defendant's expert witnesses offered during the mitigation stage of his capital trial. Carter, supra, at 560.
 {¶ 12} In this case, the jury wanted to be able to read the entire trial transcript, not just to have the testimony of one witness read to them. The court explained to the jury that it would take at least two, and maybe as many as seven, days to type a transcript and so the jury would have to rely on its collective memories of the testimony. This is a standard jury instruction. We cannot conclude that this was an abuse of discretion, particularly when both attorneys agreed with the court's decision and reasoning.
 {¶ 13} Because the trial court did not err in answering a jury question outside of Williams' presence, and because the court did not abuse its discretion in refusing a jury request for a trial transcript, Williams' first assignment of error is overruled.
 {¶ 14} Williams' second assignment of error:
 {¶ 15} "The appellant was denied a fair trial due to the prejudicial nature of the testimony offered by the State and its failure to ensure compliance with a motion in limine preventing testimony concerning the appellant's incarceration."
 {¶ 16} Here Williams alleges that he was denied a fair trial because the State allowed a witness to offer testimony that he had been incarcerated for several months despite a motion in limine that the trial court had granted excluding such testimony. The record shows that the State advised witnesses not to mention Williams' incarceration. Nevertheless, during the testimony of Kelly Brumhall, the State asked when Williams and his wife had stopped living in her trailer. Rather than giving a date, Brumhall said, "When he went to jail." The State turned her back in the right direction with the next question, but just sentences later, Brumhall again referred to Williams having been in jail. Clearly, Brumhall's statements that Williams had been in jail were not responsive to the State's questions.
 {¶ 17} Williams' counsel promptly objected, and the trial court properly sustained the objection. Moreover, the trial court immediately gave the jury a curative instruction to disregard her statement. It is assumed that a jury follows the instructions that it is given, including instructions to disregard testimony. See, e.g., State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶93, citations omitted. We find that the court's curative instruction prevented any prejudice. Accordingly, Williams' second assignment of error fails. Williams' third assignment of error:
 {¶ 18} "The verdict is against the manifest weight of the evidence, thereby denying the appellant of his right to due process."
 {¶ 19} When reviewing a judgment under a manifest weight standard of review "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 20} Williams was convicted of illegal manufacture of drugs, in violation of R.C. § 2925.04(A)(C)(2). Revised Code §2925.04(A) states "No person shall knowingly * * * manufacture or otherwise engage in any part of the production of a controlled substance." Subsection (C)(2) addresses specific controlled substances that are manufactured and the degree of crime committed.
 {¶ 21} In a single paragraph Williams argues that his conviction was against the manifest weight of the evidence because there were inconsistencies in the evidence, because the co-defendants' testimony was not reliable, and because Williams was not even in the area during the time covered by the indictment. We find these cursory claims to be unpersuasive.
 {¶ 22} There are almost always inconsistencies in evidence. Such is the nature of a trial. Nevertheless, it is up to the jury to resolve any conflicts in the evidence. State v. Chambers
(Nov. 30, 1994), Montgomery App. No. 14259, numerous citations omitted. Similarly, it is the province of the jury to weigh the credibility of witnesses. Id. The jury was fully aware that Mullins and Cottrell had reached agreements with the State to testify against Williams. The jury was entitled to believe or reject all or any part of the co-defendants' testimonies. Finally, although it is true that the evidence shows that Williams was not in the area during almost the first half of the ten-month time covered by the indictment, he was in the area during at least the half of that time.
 {¶ 23} The State provided more than enough evidence for the jury to find both that Williams had knowingly manufactured a controlled substance and that he had knowingly engaged in the production of a controlled substance. The testimony showed that every couple of weeks Williams gave Cottrell or Mullins money and told them what ingredients to buy from local stores. The ingredients were usually taken directly to Mullins' abandoned property where Williams and Brown used them to manufacture methamphetamine. When they were finished, they would burn the waste on Cottrell's parents' property. Law enforcement officers found evidence of methamphetamine labs at both locations.
 {¶ 24} The State offered sufficient evidence regarding every element of illegal manufacture of drugs in order to support Williams' conviction. Therefore, we cannot say that it is patently apparent that the jury clearly lost its way, and we will not disturb the verdict. Williams' third assignment of error is without merit and is overruled.
 {¶ 25} Having overruled all three of Williams' assignments of error, the judgment of the trial court is affirmed.
Brogan, J. and Wolff, J., concur.