OPINION
{¶ 1} Defendant-appellant, Michael D. Hudson, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.
 {¶ 2} In 2001, appellant, his brother David Hudson ("Hudson"), Christopher Williams, Tony Wicks, and Steve Depasquale were all friends. They spent a lot of time together at an apartment on East 17th Avenue in Columbus, Ohio, that was rented by *Page 2 
appellant's girlfriend, Keisha Barnett. Appellant and Williams sold marijuana out of the apartment that they purchased from a man named Garfield Commissiong.
 {¶ 3} Sometime in early 2001, appellant, Williams, Hudson, Wicks and his girlfriend, Adeana Toles, had a conversation about robbing Commissiong. It is not clear who or what initiated the conversation, but Toles thought that appellant started the talk after getting into a fight with Commissiong. According to Depasquale, appellant directed him to follow Commissiong to discover where he lived so that they could rob his house. To do this, appellant would call Commissiong and have him come over to the apartment to sell marijuana. Depasquale and others, including Hudson and Barnett, would be waiting outside the apartment in a car, ready to follow Commissiong after he left the apartment. They followed him a number of times to discover where Commissiong lived.
 {¶ 4} On the morning of May 7, 2001, appellant called Williams and told him to meet Commissiong at the East 17th Avenue apartment. Williams arrived at the apartment around noon; Hudson was already inside the apartment. Shortly thereafter, Commissiong came to the apartment. While Williams was upstairs, Hudson shot Commissiong in the leg. Commissiong was taken to a couch in the living room where he was handcuffed to a mountain bike. Williams took a shirt from Hudson and tied it around Commissiong's leg to try and stop the bullet wound from bleeding.
 {¶ 5} Within an hour, both appellant and Wicks arrived at the apartment. Commissiong remained in the living room handcuffed to the bike. Appellant called Barnett and Depasquale and asked them both to come to the apartment. When they *Page 3 
arrived, appellant told them[1] to go to Commissiong's apartment and search it for marijuana and money. They expected to find a large amount of marijuana in the apartment. Appellant gave them a key taken from Commissiong. Barnett drove Depasquale to an apartment at 2556 Spring Way Court, one of the apartments they had seen when they followed Commissiong. They entered the apartment and searched it but only found a small amount of marijuana. Depasquale also found some money that he kept for himself. In about an hour, they returned to the apartment on East 17th Avenue and gave appellant the marijuana they found. Depasquale told appellant that the large amount of marijuana they expected to find was not there. Depasquale left the apartment to go to class and then went home.
 {¶ 6} Later in the evening, appellant called Depasquale again and asked him to return to the apartment. After he got there, appellant led a blindfolded and handcuffed Commissiong out of the apartment and into the back seat of his own car. Appellant drove Commissiong's car and Depasquale followed him in his own car. According to Depasquale, they drove for awhile until they went to a parking lot where appellant parked the car. Depasquale pulled his car up behind appellant and watched appellant get out of the car, open the back door and shoot a gun at Commissiong. Appellant then got in Depasquale's car and the two returned to the East 17th Avenue apartment. After he got back to the apartment, Wicks overheard appellant telling Williams that he "took care of it."
 {¶ 7} In the early morning hours of May 8, 2001, police officers were called to a business on Lamb Road in Columbus, Ohio, to respond to a burglary alarm. In the *Page 4 
business' parking lot, Officer Amy Welsh observed a running car in the parking lot. She saw a person in the back seat that appeared to be asleep. She soon discovered that the man, later identified as Commissiong, was dead. He was handcuffed and also had a shirt tied around his leg. The police discovered five spent shell casings in the car. The casings were all .380 caliber. Williams testified that after these events, the gun that they kept at the East 17th
Avenue apartment, a .380 pistol, was gone. An autopsy revealed that Commissiong had been shot 8 times, including two fatal wounds.
 {¶ 8} As a result of these events, a Franklin County Grand Jury indicted appellant[2] for three counts of aggravated murder in violation of R.C. 2903.01. Each of those counts contained a death penalty specification. Appellant was also indicted for one count of kidnapping in violation of R.C. 2905.01, one count of aggravated burglary in violation of R.C. 2911.11, one count of aiding or abetting another in committing aggravated burglary in violation of R.C. 2923.03, one count of aggravated robbery in violation of R.C. 2911.01, one count of tampering with evidence in violation of R.C. 2921.12, one count of intimidation of a witness in violation of R.C. 2921.04, and one count of having a weapon under disability in violation of R.C. 2923.13. Each of the aggravated murder, aggravated burglary, and aggravated robbery counts contained firearm and repeat violent offender specifications.
 {¶ 9} Appellant entered a not guilty plea to the counts and proceeded to a jury trial. Before trial, at the State's request, the trial court dismissed the weapon under disability count as well as the repeat violent offender specifications from the indictment. The trial court also dismissed one of the aggravated murder counts and amended the two *Page 5 
counts involving aggravated burglary to burglary. At trial, Williams, Depasquale and Wicks testified against appellant and described his involvement with Commissiong's death. The testimony described appellant as the leader of the plan to rob Commissiong. The jury ultimately found appellant guilty of one count of kidnapping and one count of burglary with a firearm specification of the Spring Way Court apartment. The jury found appellant not guilty of the remaining counts. The trial court sentenced appellant to consecutive, maximum prison terms of ten years for the kidnapping conviction and eight years for the burglary conviction.[3]
 {¶ 10} Appellant appeals and assigns the following errors:
 FIRST ASSIGNMENT OF ERROR
 The trial court erred in entering judgment of conviction for Count 7 (Burglary of 2556 Spring Way Court) and Count 8 (Kidnapping of Garfield Commissiong) because those convictions are against the manifest weight of the evidence.
 SECOND ASSIGNMENT OF ERROR
 The Court of Common Pleas violated appellant's right to trial by jury by sentencing appellant to a term of incarceration which exceeded the statutory maximum mandated by the Sixth and Fourteenth Amendments. The decision rendered by the Supreme Court of Ohio in State v. Foster
(2006), 109 Ohio St.3d 1, 2006-Ohio-856 which purports to authorize sentences in excess of the statutory maximum, is incompatible with the controlling precedent of the United States Supreme Court and must be rejected.
 THIRD ASSIGNMENT OF ERROR
 The Court of Common Pleas violated appellant's rights under the Ex Post Facto Clause of the Federal Constitution by sentencing appellant to a term of incarceration which exceeded the maximum penalty available under the statutory *Page 6 
framework at the time of the offense. The decision rendered by the Supreme Court of Ohio in State v. Foster (2006), 109 Ohio St.3d 1, which purports to authorize sentences rendered against defendant * * * is incompatible with the controlling precedent of the United States Supreme Court and must be rejected.
 FOURTH ASSIGNMENT OF ERROR
 The Court of Common Pleas violated appellant's rights under the Fourteenth Amendment to the Federal Constitution by sentencing appellant pursuant to the decision rendered by the Supreme Court of Ohio in State v. Foster (2006), 109 Ohio St.3d 1, because the holding of Foster is invalid under Rogers v. Tennessee (2001), 532 U.S. 451.
 FIFTH ASSIGNMENT OF ERROR
 The rule of lenity requires the imposition of minimum and concurrent sentences, and the ruling of the Court of Common Pleas to the contrary must be reversed.
 SIXTH ASSIGNMENT OF ERROR
 The sentence imposed upon Defendant Hudson was an abuse of discretion.
 {¶ 11} Appellant's first assignment of error claims that his convictions for the aiding and abetting burglary of Spring Way Court and kidnapping were against the manifest weight of the evidence. We disagree. When presented with a challenge to the manifest weight of the evidence, an appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."' State v. Thompkins (1997),78 Ohio St.3d 380, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for *Page 7 
only the most "`exceptional case in which the evidence weighs heavily against the conviction."' Id.
 {¶ 12} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973;State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 74.
 {¶ 13} The State claimed that appellant aided and abetted the burglary of 2556 Spring Way Court. In order to convict appellant of aiding and abetting burglary, the State had to demonstrate that appellant aided or abetted others who, by force, stealth, or deception, trespassed in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal *Page 8 
offense. R.C. 2923.02(A); 2911.12(A). The State alleged that the criminal offense intended to be committed inside the structure was theft. In order to commit a theft, the State had to prove that he purposely deprived the owner of property by knowingly obtaining or exerting control over the property without the consent of the owner. R.C. 2913.02(A)(1).
 {¶ 14} In order to convict appellant of kidnapping, the State had to demonstrate that appellant, by force, threat, or deception, did, by any means: remove Commissiong from the place he was found or restrain Commissiong of his liberty, with the purpose to facilitate the commission of a felony or flight thereafter or to terrorize or inflict serious physical harm on Commissiong. R.C. 2905.01(A). The State theorized that appellant acted with the intent to commit murder or to inflict serious physical harm on Commissiong.
 {¶ 15} Appellant initially claims that his convictions were against the manifest weight of the evidence because the State's witnesses were not credible, as they were dishonest, convicted felons who received lesser prison sentences in exchange for their testimony against appellant. We disagree.
 {¶ 16} A number of the State's witnesses were convicted felons who were also charged with and pled guilty to crimes arising from Commissiong's death. Williams had previous convictions for attempted drug trafficking, domestic violence, and providing false information to a public official. He entered into a plea agreement with the State to plea guilty to burglary and abduction charges arising from Commissiong's death. He received a six-year total prison sentence. Depasquale entered into a plea agreement with the *Page 9 
State to resolve charges arising out of this case and other unrelated cases.[4] In regards to this case, he pled guilty to a count of burglary. He received a 15-year total prison sentence for the convictions and agreed to testify truthfully in this case. Wicks also entered into a plea agreement with the State to resolve charges arising out of this case and an unrelated case.[5] In regard to this case, he pled guilty to a count of burglary. He received probation for those convictions and agreed to testify truthfully against appellant. Toles had an unrelated felony conviction for attempted illegal conveyance of marijuana. It does not appear from the record that she was charged with any crimes arising from Commissiong's death.
 {¶ 17} The jury heard testimony from these witnesses and was aware of their prior convictions and that most of them entered into plea agreements with the State to resolve charges arising out of these events as well as unrelated crimes. They were also aware of the prison sentences the witnesses received as a result of those plea agreements. The jury, however, was in the best position to weigh and determine the credibility of those witnesses and was entitled to believe or disbelieve the testimony from those witnesses. State v. Woodward, Franklin App. No. 03AP-398, 2004-Ohio-4418, at ¶ 19-20; State v. Williams, Miami App. No. 2004-CA-6, 2004-Ohio-6218, at ¶ 22; State v. McNeal (Nov. 2, 2001), Hamilton App. No. C-000717. Their testimony was not so uncredible as to render appellant's convictions against the manifest weight of the evidence.
 {¶ 18} Appellant also specifically contends that Depasquale's testimony, as it related to the burglary conviction, was not credible because the jury obviously did not *Page 10 
believe his testimony that appellant murdered Commissiong. We disagree. The jury is free to believe or disbelieve any or all of a witnesses' testimony. Jackson, supra. Here, it was within the province of the jury to believe some of Depasquale's testimony but disbelieve other portions of his testimony. The jury obviously believed Depasquale's testimony that appellant directed him to burglarize Commissiong's apartment but disbelieved his testimony that appellant killed Commissiong. This is within the province of the jury and does not render appellant's convictions against the manifest weight of the evidence.
 {¶ 19} The weight of the evidence demonstrates that appellant aided and abetted the burglary of Spring Way Court. Before the day of the burglary, he directed Depasquale and others to follow Commissiong in order to discover where he lived so that they could rob his home. On May 7, appellant gave Depasquale and Barnett a key to Commissiong's apartment and told them to go to the apartment and search it for marijuana and money. Depasquale testified that he took marijuana and money from the apartment. The jury did not clearly lose its way when it convicted appellant of aiding or abetting the burglary of the Spring Way Court apartment.
 {¶ 20} Similarly, the weight of the evidence also supports appellant's kidnapping conviction. Testimony indicates that appellant led a blindfolded and handcuffed Commissiong out of the apartment and into a car. Appellant then drove the car to a parking lot where Commissiong was found dead in the back seat of the car. It is not against the manifest weight of the evidence for a jury to believe that appellant removed Commissiong from the apartment with the intent to murder or to inflict serious physical harm on him. Toles testified that appellant mentioned killing Commissiong in the first *Page 11 
conversation they had regarding robbing him. Wicks also testified that although appellant told Commissiong that he was going to let him go, he told Williams that he did not want to let him go. While the jury obviously did not believe that appellant fired the fatal shots, their determination that appellant took Commissiong to the parking lot with the intent to murder or to inflict serious physical harm on Commissiong is not against the manifest weight of the evidence.
 {¶ 21} This is not the exceptional case where the evidence weighs heavily against the convictions. Accordingly, appellant's convictions are not against the manifest weight of the evidence, and his first assignment of error is overruled.
 {¶ 22} Appellant contends in his second assignment of error that the trial court violated Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, by sentencing him to a term of incarceration which exceeded the statutory maximum sentence available absent factual findings made in accordance with his right to a jury trial. Appellant was sentenced afterBlakely but did not object to the trial court's sentence based onBlakely. Therefore, appellant has waived this challenge. State v.Payne, Franklin App. No. 05AP-517, 2006-Ohio-2552, at ¶ 6. Appellant also fails to demonstrate plain error because a trial court is no longer required to engage in judicial findings prior to the imposition of consecutive or maximum sentences. State v. Darks, Franklin App. No. 05AP-982, 2006-Ohio-3144, at ¶ 23; State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856.
 {¶ 23} Appellant also contends that the Supreme Court of Ohio's decision in Foster is incompatible with the United States Supreme Court precedent in this area and that he is entitled to a minimum, concurrent sentence on remand. We disagree. This court is bound to follow a decision of the Supreme Court of Ohio and we cannot overrule that *Page 12 
court's decision or declare it unconstitutional. State v. Bruce,170 Ohio App.3d 92, 2007-Ohio-175, at ¶ 6; State v. Durbin, Greene App. No. 2005-CA-134, 2006-Ohio-5125, at ¶ 42; State v. Alexander, Franklin App. No. 06AP-501, 2006-Ohio-6375, at ¶ 7; State v. Schweitzer, Auglaize App. No. 2-06-25, 2006-Ohio-6087, at ¶ 7-9.
 {¶ 24} Accordingly, we overrule appellant's second assignment of error.
 {¶ 25} Appellant contends in his third and fourth assignments of error that the Foster court's severance remedy, as applied to his case, violates due process and ex post facto principles against retroactivity. We disagree. This court recently considered and rejected this argument.State v. Gibson, Franklin App. No. 06AP-509, 2006-Ohio-6899, at ¶ 18;State v. Pigot, Franklin App. No. 06AP-343, 2007-Ohio-141, at ¶ 7;State v. Sieng, Franklin App. No. 06AP-852, 2007-Ohio-1502, at ¶ 6. See, also, State v. McGhee, Shelby App. No. 17-06-05, 2006-Ohio-5162;State v. Green, Ashtabula App. No. 2005-A-0069, 2006-Ohio-6695, at ¶ 22. We agree with the reasoning set forth in these cases that the severance remedy chosen by the Supreme Court of Ohio in Foster does not violate ex post facto or due process principles.
 {¶ 26} To the extent appellant also contends in these assignments of error that the Supreme Court of Ohio's decision in Foster is incompatible with the United States Supreme Court precedent in this area, we again disagree. Accordingly, we overrule appellant's third and fourth assignments of error.
 {¶ 27} Appellant contends in his fifth assignment of error that the rule of lenity requires the trial court to impose minimum and concurrent sentences. We disagree. The rule of lenity, R.C. 2901.04(A), is a rule of statutory construction which provides that "sections of the Revised Code defining offenses or penalties shall be strictly construed *Page 13 
against the state, and liberally construed in favor of the accused." The rule applies only where there is an ambiguity in a statute or a conflict between statutes. State v. Moore, Allen App. No. 1-06-51,2006-Ohio-6860, at ¶ 11-12; Green, at ¶ 24. The rule has no applicability in the present case because there is no ambiguity or conflict in the sentencing statutes, and appellant does not contend otherwise. See Bruce, at ¶ 13. This court has also recently considered and rejected this argument. State v. Henderson, Franklin App. No. 06AP-645, 2007-Ohio-382, at ¶ 10; State v. Ragland, Franklin App. No. 04AP-829, 2007-Ohio-836, at ¶ 10. Therefore, appellant's fifth assignment of error is overruled.
 {¶ 28} Finally, in his sixth assignment of error, appellant contends that the trial court's sentence was an abuse of discretion. We first note that the proper standard used to review a criminal sentencing is not abuse of discretion. Instead, we must determine whether appellant's sentence is clearly and convincingly contrary to law. R.C. 2953.08(G); State v. Burton, Franklin App. No. 06AP-690, 2007-Ohio-1941, at ¶ 29.
 {¶ 29} Appellant argues that the trial court sentenced him based on its belief that appellant was ultimately responsible for Commissiong's death, even though he was acquitted of his murder.[6] However, as this court has noted, "`a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted.'" State v. Epley (Aug. 25, 1998), Franklin App. No. 97APA11-1467, quoting United States v. Watts (1997),519 U.S. 148, 117 S.Ct. 633. See, also, State v. Daniel, Franklin App. No. 05AP-564, 2006-Ohio-4627, at ¶ 40. *Page 14 
 {¶ 30} In Daniels, the trial court stated at sentencing its belief that defendant committed murder, even though the jury acquitted him of that charge. Based on that belief, the trial court sentenced the defendant to the maximum prison term. Based upon a review of this court's pronouncements on this subject, as well as the Supreme Court of Ohio's decision in State v. Wiles (1991), 59 Ohio St.3d 71, we declined to find reversible error in that case. Similarly, in this case, the trial court stated its belief that appellant's actions resulted in the death of another, even though he was acquitted of murder. The trial court imposed maximum prison terms on appellant based on that belief. In accordance with Daniels, the trial court's reliance on that belief does not constitute reversible error.
 {¶ 31} The trial court properly considered the purposes and principles of sentencing pursuant to R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. The trial court's sentences were both within the statutory sentencing ranges set forth in R.C. 2929.14(D). Additionally, the trial court did not commit reversible error when it noted its belief that appellant's actions resulted in the death of another. Id. Accordingly, the trial court's sentence was not clearly and convincingly contrary to law. Appellant's sixth assignment of error is overruled.
 {¶ 32} In conclusion, appellant's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
[1] Although the evidence was conflicting, Hudson may also have gone to the apartment with Depasquale and Barnett.
[2] The grand jury also indicted Hudson in the same indictment.
[3] The trial court also imposed an additional one-year prison term for appellant's firearm specification conviction.
[4] Those other cases involved a felony charge of trafficking in drugs, felonious assault, and failure to comply with an order of an officer.
[5] That other case involved a felony charge of trafficking in drugs.
[6] At the sentencing hearing, the trial court stated: "No matter whether you committed the actual murder or not, your actions were responsible for that, and therefore, I will impose the maximum sentence."
 Judgment affirmed.
 PETREE and WHITESIDE, JJ., concur. WHITESIDE, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 15