OPINION
{¶ 1} Defendant-appellant, Wesley L. Thompson, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.
 {¶ 2} Late in the evening of January 18, 2006, or very early the following morning, appellant drove to an apartment complex on the west side of Columbus to sell drugs with his girlfriend, Christina Reime. After making a sale, appellant and Reime drove around *Page 2 
the immediate area and then returned to the apartment complex. Upon their return, Reime saw Gerald Loar walking through the complex parking lot. Reime asked Loar if he wanted to buy any drugs. Loar purchased some crack cocaine from Reime. Reime and Loar then went to Loar's nearby truck to smoke the crack.
 {¶ 3} Thereafter, Loar expressed his desire to purchase sex from Reime. Reime told Loar that she wanted to get a hotel room because she did not "do tricks in trucks." Reime then got out of the truck to make additional drug sales in the apartment complex. She returned to her car, which was also parked in the complex parking lot. Reime was joined by Loar and appellant. Loar approached Reime and grabbed her between her legs and again asked her for sex. Appellant punched Loar in the face, knocking him to the ground. Appellant punched Loar a couple more times and kicked him while he was on the ground. Appellant then took Loar's cell phone. Reime took off Loar's boots looking for drugs. Appellant and Reime then fled the scene. Reime threw Loar's boots out the car window as they drove. Reime and appellant drove to Reime's mother's house. The police later discovered Loar's boots in two different, nearby locations. Appellant told Reime's mother that he punched a guy and knocked him out after the guy touched Reime. Reime's mother observed that appellant's hand was bleeding. The next day, appellant and Reime left Columbus and went to Chicago, Illinois.
 {¶ 4} On the morning of January 19, 2006, a taxi cab driver found Loar's body face down in the apartment complex parking lot. Loar had extensive injuries to his head, including a broken nose and a fractured cribriform plate at the base of his skull. A coroner testified that Loar died from blunt force trauma that compressed his spinal cord, causing his heart to stop. The coroner testified that the blunt force trauma could have *Page 4 
been caused by a punch or a kick and that Loar probably died within a few moments of the blunt force trauma.
 {¶ 5} As a result of these events, appellant and Reime were ultimately found and arrested. A Franklin County grand jury indicted appellant with two counts of felony murder in violation of R.C. 2903.02(B). Both counts also contained a specification pursuant to R.C. 2941.149 that alleged appellant was a repeat violent offender ("RVO"). Appellant was also indicted for one count of aggravated robbery in violation of R.C.2911.01, one count of felonious assault in violation of R.C. 2903.11
with a RVO specification, one count of trafficking in cocaine in violation of R.C. 2925.03, and two counts of robbery in violation of R.C. 2911.02. Appellant entered a not guilty plea to the charges and proceeded to a jury trial.
 {¶ 6} Reime also was indicted as a result of these events but eventually agreed to plead guilty to one count of involuntary manslaughter and one count of drug trafficking. She received a four-year prison sentence. As part of her plea agreement, she agreed to testify in appellant's case.
 {¶ 7} At trial, Reime testified that appellant punched and kicked Loar after he grabbed her. She stated that appellant took Loar's cell phone. She described how she looked for hidden drugs in Loar's boots and then took the boots as she and appellant fled the scene. After both sides rested their cases, the trial court allowed the State to reopen its case to present testimony from Isaac Jackson. During the trial, Jackson was incarcerated with appellant in the Franklin County jail. Jackson testified that he spoke with appellant about appellant's trial and that appellant told him that Reime and appellant sold drugs to Loar and then robbed him, but "in the process," appellant killed Loar. *Page 4 
Thereafter, the trial court denied appellant's request to present additional witnesses in response to Jackson's testimony.
 {¶ 8} The jury found appellant guilty of all counts and the trial court found appellant guilty of the RVO specifications. The trial court sentenced appellant accordingly. Appellant appeals and assigns the following errors:
 FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT VIOLATED WESLEY THOMPSON'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY PREVENTING THE INTRODUCTION OF THE TESTIMONY FROM THREE WITNESSES HE ATTEMPTED TO CALL TO EXPLAIN THE CIRCUMSTANCES SURROUNDING HIS CONFESSION IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE IV OF THE OHIO CONSTITUTION.
 SECOND ASSIGNMENT OF ERROR:
 WESLEY THOMPSON'S RIGHT TO A FAIR TRIAL WAS VIOLATED BECAUSE TRIAL COUNSEL WAS INEFFECTIVE FOR NOT REQUESTING A JURY CHARGE OF VOLUNTARY MANSLAUGHTER IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT UNDER THE U.S. CONSTITUTION.
 THIRD ASSIGNMENT OF ERROR:
 THE TRIAL COURT VIOLATED WESLEY THOMPSON'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR AGG. ROBBERY, ROBBERY AND MURDER WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND VIOLATED THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
 FOURTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT VIOLATED WESLEY THOMPSON'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN, IN *Page 5 
THE ABSENCE OF SUFFICIENT EVIDENCE, THE TRIAL COURT FOUND HIM GUILTY OF AGG. ROBBERY, ROBBERY, AND MURDER IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.
 {¶ 9} Appellant contends in his first assignment of error that the trial court erred when it refused to allow him to present additional witnesses to rebut Isaac Jackson's testimony. Although the State conceded this error during oral argument, it argued that the error was harmless. We agree.
 {¶ 10} On April 25, 2007, both sides rested their case, and then began to prepare jury instructions. The trial court adjourned the trial until the next day. However, in the interim, a Columbus Police Detective informed the State that another inmate, Issac Jackson, claimed that appellant confessed that he killed Loar. Jackson and appellant were both inmates in the Franklin County jail. Jackson claimed appellant told him that appellant had intended to rob Loar of the drugs Reime previously sold Loar and that in the process, appellant killed Loar.
 {¶ 11} After receiving that information, the State informed the trial court of its desire to reopen its case to present Jackson's testimony. The trial court continued the trial until April 30 to give appellant's counsel time to research issues that might arise in these circumstances and to prepare for cross-examination. The State provided appellant with some discovery related to Jackson before the trial resumed, including a transcript of the interview the State conducted with Jackson.
 {¶ 12} When the trial resumed on April 30, the trial court denied appellant's motion to exclude Jackson's testimony and allowed the State to reopen its case. Following Jackson's testimony, appellant's counsel sought permission to reopen appellant's case to *Page 6 
present three additional witnesses from the Franklin County jail. Appellant alleged that these witnesses would cast doubt on Jackson's credibility by offering evidence that Jackson read legal documents relating to appellant's case. Appellant contended that this is how Jackson learned of information about the case. This evidence would impeach Jackson's claim that he learned this information from a conversation with appellant. The trial court refused to allow appellant's witnesses to testify. However, appellant's trial counsel challenged Jackson's credibility on cross-examination.
 {¶ 13} Appellant claims that the trial court's decision violated his constitutional right to present a complete defense. Whether rooted in the Sixth or Fourteenth Amendments to the United States Constitution, a criminal defendant has a constitutional right to present a complete defense. Holmes v. South Carolina (2006), 547 U.S. 319, 126 S.Ct. 1727
(state rule prohibiting presentation of proof of third-party guilt in certain situations violated defendant's right to present a complete defense); Crane v. Kentucky (1986), 476 U.S. 683, 690, 106 S.Ct. 2142
(criminal defendant improperly prevented from presenting evidence to show that confession was unreliable).
 {¶ 14} However, the exclusion of a defendant's profferred witness is subject to harmless error analysis. State v. Kehn (1977),50 Ohio St.2d 11, 19-20. Error in excluding evidence is harmless if the jury would not have rendered a different verdict had the excluded evidence been admitted at trial. State v. West, Franklin App. No. 06AP-11,2006-Ohio-6259, at ¶ 9. Additionally, constitutional error does not require reversal if the error was harmless beyond a reasonable doubt.State v. Conway, 108 Ohio St.3d 214, 2006-Ohio-791, at ¶ 78. *Page 7 
 {¶ 15} Jackson testified that he had a discussion with appellant about appellant's case during the time they were being held together in the Franklin County jail. Jackson testified that appellant told him that Loar wanted to buy some drugs, and that after appellant and Reime sold Loar the drugs, they took the drugs back. Jackson further testified that appellant told him that they beat Loar and, in the process, killed him. On cross-examination, appellant's counsel questioned Jackson about his prior felony convictions. Jackson was currently serving a long prison sentence and admitted that he wanted to get out of jail early. Counsel asked Jackson about other times he testified against fellow inmates who allegedly confessed to crimes. Jackson also admitted on cross-examination that some inmates at the jail receive legal documents that may contain information about the inmate's case and that there is no secure location for the documents. Jackson denied, however, reading documents related to appellant's case.
 {¶ 16} The State downplays the significance of Jackson's testimony by pointing out that it was largely duplicative of testimony already presented in its case-in-chief. Therefore, the State argues that the trial court's refusal to allow appellant to present witnesses to challenge Jackson's credibility was harmless error. Given the substance of Jackson's testimony, we agree.
 {¶ 17} Jackson's testimony essentially duplicated the testimony of Reime and her mother, except for Jackson's contention that appellant admitted his motive for the attack was robbery. Reime testified that appellant told her that he attacked Loar because Loar grabbed her. Reime's mother testified that appellant told her that he knocked a guy out after the guy touched Reime. Reime's mother saw that appellant's hand was bleeding. As the State points out, regardless of appellant's motive, appellant committed aggravated *Page 8 
robbery because he took Loar's cell phone immediately after he inflicted serious physical harm on Loar. State v. Kincaid, Wayne App. No. 01CA007947, 2002-Ohio-6116, at ¶ 30 (offense of aggravated robbery requires knowing conduct, regardless of purpose). Thus, even if appellant had presented witnesses that would have discredited Jackson's testimony concerning appellant's purported confession, the State had already presented substantial evidence that appellant punched and kicked Loar and took his cell phone. Therefore, there was substantial evidence that appellant committed aggravated robbery and, because Loar died as a result, felony murder. The jury would not have rendered a different verdict had the excluded evidence been admitted at trial. West.
 {¶ 18} Additionally, even without the proffered testimony, appellant's counsel was able to effectively challenge Jackson's credibility through cross-examination. Appellant's counsel brought out Jackson's prior convictions and Jackson's desire to reduce his current prison sentence. Appellant's counsel also highlighted Jackson's history of testifying against other inmates, and his access to legal documents relating to appellant's case in the Franklin County jail. Thus, appellant's counsel was still able to effectively challenge Jackson's credibility, even without the testimony of other witnesses.
 {¶ 19} For these reasons, the trial court's decision to prohibit appellant from presenting additional witnesses to rebut Jackson's testimony was harmless error. Therefore, we overrule appellant's first assignment of error.
 {¶ 20} Appellant contends in his second assignment of error that he received ineffective assistance of counsel. In order to prevail on an ineffective assistance of counsel claim, appellant must meet the two-prong test enunciated in Strickland v. *Page 9 Washington (1984), 466 U.S. 668, 104 S.Ct. 2052; accord State v.Bradley (1989), 42 Ohio St.3d 136, certiorari denied (1990),497 U.S. 1011, 110 S.Ct. 3258. Initially, appellant must show that counsel's performance was deficient. To meet that requirement, appellant must show counsel's error was so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Appellant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690. In analyzing the first prong of Strickland, there is a strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 689. Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id., citing Michel v. Louisiana (1955), 350 U.S. 91,101, 76 S.Ct. 158.
 {¶ 21} If appellant successfully proves that counsel's assistance was ineffective, the second prong of the Strickland test requires appellant to prove prejudice in order to prevail. Strickland, at 692. To meet that prong, appellant must show counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. Id. at 687. Appellant would meet this standard with a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 22} Appellant contends his trial counsel was ineffective for failing to request a jury instruction on voluntary manslaughter, an inferior degree of murder. We disagree. *Page 10 
 {¶ 23} Trial counsel's decision not to request a jury instruction on voluntary manslaughter might have been part of his trial strategy and, therefore, cannot be considered ineffective assistance of counsel.State v. Lee, Franklin App. No. 04AP-234, 2004-Ohio-6834, at ¶ 22, citing State v. Griffie (1996), 74 Ohio St.3d 332, 333; State v.Copley, Franklin App. No. 04AP-511, 2005-Ohio-896, at ¶ 44; see, also,State v. Davis, Stark App. No. 2003 CA 429, 2004-Ohio-7056, at ¶ 55
("Thus, appellant has failed to overcome the presumption that trial counsel employed sound trial strategy in not requesting a jury instruction on the crime of voluntary or involuntary manslaughter.").
 {¶ 24} Although appellant now questions his counsel's decision not to request an instruction for voluntary manslaughter, he has not overcome the presumption that such a decision may have been part of his counsel's sound trial strategy. Counsel argued at trial that appellant did not commit these offenses. Counsel presented two witnesses in an attempt to place the blame for Loar's death on other people. One witness testified that on the night before the murder, she saw two angry looking women walking in the area of the murder carrying a baseball bat. Counsel argued that Loar's injuries could have been caused by a bat, a proposition agreed to by the coroner. The other witness, a woman who lived in the area, testified that her girlfriend, Danette Lowery, left their apartment early in the morning of January 19, 2006 to meet Loar. Lowery was a prostitute who was also violent. Lowery did not return for a half-an-hour. After she did return, the police knocked on the apartment door and Lowery would not let them inside. Counsel also highlighted the inconsistencies and credibility concerns of the State's witnesses.
 {¶ 25} Appellant's counsel reasonably could have been pursuing a valid "all or nothing" strategy. Appellant has not demonstrated that his trial counsel was ineffective by *Page 11 
failing to request a jury instruction on voluntary manslaughter. Appellant's second assignment of error is overruled.
 {¶ 26} Appellant contends in his third and fourth assignments of error that his murder, aggravated robbery, and robbery convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.[1] The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. Therefore, we will separately discuss the appropriate standard of review for each.
 {¶ 27} In State v. Jenks (1991), 61 Ohio St.3d 259, the Supreme Court of Ohio delineated the role of an appellate court presented with a challenge to the sufficiency of the evidence:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Id., at paragraph two of the syllabus.
 {¶ 28} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins, at 386. Indeed, in determining the sufficiency of the evidence, an appellate court must "give full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic *Page 12 
facts to ultimate facts ." Jackson v. Virginia (1979), 443 U.S. 307,319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas (1982), 70 Ohio St.2d 79, 80. A jury verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v.Treesh, 90 Ohio St.3d 460, 484, 2001-Ohio-4; Jenks, at 273.
 {¶ 29} In order to convict appellant of felony murder, the State had to prove beyond a reasonable doubt that appellant caused Loar's death as a proximate result of committing or attempting to commit aggravated robbery and/or felonious assault. R.C. 2903.02(B).[2] In order to convict appellant of aggravated robbery, the State had to prove beyond a reasonable doubt that appellant inflicted or attempted to inflict serious physical harm to Loar in attempting or committing a theft offense or in fleeing immediately after the attempt or offense. R.C.2911.01. A theft offense includes robbery. R.C. 2913.01(K)(1). In order to convict appellant of robbery, the State had to prove beyond a reasonable doubt that appellant used or threaten the immediate use of force against Loar in attempting or committing a theft offense or in fleeing immediately after the attempt or offense. R.C. 2911.02.
 {¶ 30} Appellant's convictions are interrelated and begin with his conviction for robbery. Appellant claims that the State did not present sufficient evidence to prove that he robbed Loar. He claims that he did not intend to rob Loar when he hit him and that he *Page 13 
took Loar's cell phone after Loar had died. Appellant's argument does not establish that *Page 14 
the evidence was insufficient to support his conviction for robbery. Reime testified that appellant hit Loar in the face, knocking him to the ground. Reime's mother testified that appellant told her that he hit Loar. Reime further testified that appellant took Loar's cell phone as Loar lay on the ground and that she took his boots. Viewing this evidence in a light most favorable to the prosecution, this evidence is sufficient to demonstrate that appellant used force in committing a theft offense. The fact that appellant stole Loar's property after Loar may have died is not determinative, as the offense of robbery is committed by appellant's use of force in attempting or committing a theft offense. Here, appellant punched and kicked Loar and then took his cell phone.
 {¶ 31} The evidence is also sufficient for a rational trier of fact to have found appellant guilty of aggravated robbery and felony murder. Again, Reime testified that appellant punched Loar once or twice in the face and kicked him while he was on the ground. He then took Loar's cell phone. Loar suffered severe injuries from this attack, including a broken nose, a compressed spinal cord, and a fractured cribriform plate at the base of his skull. A coroner testified that Loar died as a result of these injuries. This is sufficient evidence to prove that appellant inflicted serious physical harm while committing a theft offense. Again, the fact that appellant took Loar's property immediately after Loar died is of no consequence. "`The victim of a robbery, killed just prior to the robber's carrying off her property, is nonetheless the victim of an aggravated robbery.'" State v. Palmer (1997), 80 Ohio St.3d 543, 571, quoting State v. Smith (1991), 61 Ohio St.3d 284, 290. Further, because Loar died as a result of injuries he sustained from appellant's conduct, there was also sufficient evidence that appellant caused Loar's death as a *Page 15 
proximate result of committing an aggravated robbery. Therefore, there was sufficient evidence to support appellant's conviction for felony murder.
 {¶ 32} Appellant's manifest weight of the evidence claim requires a different review. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16. When presented with a challenge to the manifest weight of the evidence, an appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, supra, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Id.
 {¶ 33} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson, Franklin App. No. 01AP-973, 2002-Ohio-1257;State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. Consequently, although an appellate court must act as a *Page 16 
"thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v.Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28;State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 74.
 {¶ 34} Appellant contends that his convictions are against the manifest weight of the evidence because of Reime's suspect credibility and because his conduct constituted, at most, voluntary manslaughter. We disagree.
 {¶ 35} Appellant's convictions were based largely on Reime's testimony. Appellant claims her credibility is suspect because she received an advantageous plea agreement to testify against appellant. In addition to her plea agreement, Reime has a number of prior convictions, including one for providing false information. The jury was aware of all this information. The jury was in the best position to weigh and determine Reime's credibility and was entitled to believe or disbelieve her testimony. Her testimony was not so incredible as to render appellant's convictions against the manifest weight of the evidence.State v. Hudson, Franklin App. No. 06AP-335, 2007-Ohio-3227, at ¶ 17.
 {¶ 36} Furthermore, much of her testimony was corroborated by testimony from other witnesses. She described throwing Loar's boots out of the car as she and appellant drove away from the murder scene. The police later found Loar's boots in the area. Reime's mother also testified that appellant told her that he hit a guy and knocked him out after the guy grabbed Reime, the same version of events that Reime described. Reime's mother also observed that appellant's hand was bleeding. The crime scene was consistent with Reime's version of events. Loar was found face down. He was not wearing shoes and the bottoms of his socks were not soiled, suggesting that Loar did not *Page 17 
get up after he was struck. The cause of Loar's death was consistent with the blows Reime says appellant delivered.
 {¶ 37} To the extent appellant argues that his conduct constituted, at most, voluntary manslaughter, we disagree. The weight of the evidence indicates Loar died as a result of the injuries he sustained from appellant's attack. See State v. Austin (May 5, 1992), Mahoning App. No. 87 C.A. 163 (affirming murder conviction by rejecting manifest weight claim that State proved, at most, voluntary manslaughter, where evidence sufficient to prove murder). The jury did not lose its way when it convicted appellant of felony murder. Because appellant's conviction for murder is not against the manifest weight of the evidence, he could not have been convicted of voluntary manslaughter.[3] State v.Griffin, Hamilton App. No. C-070324, 2008-Ohio-702, at ¶ 12 (noting that a person cannot be convicted of both murder and voluntary manslaughter for the same killing).
 {¶ 38} Appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Accordingly, his third and fourth assignments of error are overruled.
 {¶ 39} Appellant's four assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.Judgment affirmed. BRYANT and BROWN, JJ., concur.
[1] Appellant does not challenge his convictions for felonious assault or trafficking in cocaine.
[2] Appellant was charged with two counts of felony murder. The first alleged that Loar died as a proximate result of appellant's aggravated robbery, and the second alleged that he died as a proximate result of appellant's felonious assault. The jury found appellant guilty of both counts. Because the evidence is sufficient to support his conviction for felony murder arising from the aggravated robbery, we need not address the felonious assault count.
[3] We also note that appellant did not request a jury instruction on voluntary manslaughter, so the jury never considered this offense. *Page 1