[Cite as *State v. Zonars*, 2014-Ohio-2023.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                              :

      Plaintiff-Appellee,                       :

                                            No. 13AP-735

v.                                                                 :          (C.P.C. No. 12CR-5831)

Erik D. Zonars,                                          :          (REGULAR CALENDAR)

      Defendant-Appellant.                    :


D E C I S I O N

Rendered on May 13, 2014


*Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*Todd W. Barstow*, for appellant.


APPEAL from the Franklin County Court of Common Pleas

O'GRADY, J.

{¶ 1} Defendant-appellant, Erik D. Zonars, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant was indicted on multiple counts of aggravated burglary, aggravated robbery, robbery and kidnapping, with each count containing specifications, and one count of having weapons while under disability. The indictment was later amended, and the state requested the trial court enter a nolle prosequi for six counts of robbery. The charges stemmed from allegations that appellant was part of a group that performed a home invasion on October 28, 2012. The matter proceeded to a jury trial.

Appellant was tried along with one co-defendant. The following facts pertinent to this appeal were adduced at trial.

{¶ 3} George Collins testified on behalf of the state. According to Collins, he was introduced to appellant in 2010 by a mutual acquaintance, and he only knew appellant by his first name. Collins bought some tools from appellant a few months after they met, and he loaned appellant $20 on another occasion. On yet another occasion, appellant offered to sell Collins some jewelry, but Collins declined.

{¶ 4} On October 26, 2012, appellant called Collins and offered to sell him spools of wire. Collins agreed and appellant arrived at Collins' house located at 909 Lawndale Avenue in Franklin County, Ohio. Collins purchased the wire, and, while settling on a price, the two discussed Collins' financial situation. Collins said he was struggling, but he would be doing better soon because he was expecting settlement proceeds from a lawsuit against the city of Columbus. The state also introduced evidence that there was an article in the local newspaper indicating Collins was set to receive $82,500 in settlement proceeds from the city.

{¶ 5} Two nights later, on October 28, 2012, appellant called Collins and offered to sell him a generator and some tools. Collins expressed interest and the two set a meeting at Collins' house. Collins was waiting in his detached garage when appellant arrived. Collins testified that appellant backed into his driveway all the way up to the garage and got out of his car. Appellant was not wearing a mask. Moments later, Collins saw two men wearing ski masks running up his driveway. One was carrying a shotgun, the other an AK-47. As Collins turned to run, appellant drew a handgun, put it to the back of Collins' head, and told him to get on the ground. Collins complied. The assailants tied Collins' hands behind his back, picked him up, and appellant led him into the house with a gun to the back of his head.

{¶ 6} Collins indicated there were six other people living in the house and they were all home at the time of the incident: (1) Christina Perry, Collins' girlfriend, (2) C.M., Perry's teenage son, (3) K.M., Perry's teenage daughter, (4) Cassie Perdue, Perry's cousin, (5) Brandon Bowers, Perdue's boyfriend, and (6) J.B., Perdue and Bowers' baby. Collins testified appellant walked him into the kitchen at gunpoint where they encountered Perry. Appellant laid Collins facedown on the kitchen floor and asked him where the money and

drugs were located. Collins could hear his house being ransacked and screaming in the basement. He testified he did not see anything further while the intruders were in the house. He remained still looking at the floor for about 45 minutes. He did feel an assailant slip a ring off his finger, and remove his wallet, cell phone, around $400 in cash, and prescribed medication from his pockets. The intruders heard sirens and fled.

{¶ 7} Following their departure, Collins got up and Perry untied his hands. Collins surveyed his house. It was indeed ransacked with mattresses flipped and dresser drawers emptied out onto the floor. Four flat screen TVs and other belongings were missing. When the police arrived, Collins told them what happened. He indicated appellant was one of the perpetrators, but he was only able to provide appellant's first name. On November 5, 2012, a detective brought a photo array to Collins' house containing six pictures. According to Collins, he identified appellant's picture "[w]ithin a split second." (Tr. Vol. I, 143.) Collins also identified appellant as a perpetrator by pointing him out in the courtroom.

{¶ 8} Collins admitted during his testimony that he was convicted of felony level receiving stolen property in 2007. He bought and used stolen equipment while running a landscaping company. He testified he was sentenced to three years in prison, of which he served 20 months.

{¶ 9} Perry confirmed that the seven individuals indicated above were present in the house on October 28, 2012. She was putting dishes away in the kitchen when Collins walked in with a bald-headed man following him closely behind. Collins told her not to do anything, and suddenly she was confronted by men wearing masks. They told both her and Collins to get on the ground and they pointed guns in her face. Perry got down, scooted into a corner, and that is where she remained for the duration of the ordeal. She glanced up to see a female intruder petting her dog. She had her eyes covered up most of the time, so she did not see appellant's face. She testified the intruders asked, "Where's the settlement? Where's that money?" (Tr. Vol. II, 268.) She could also hear her children in the basement crying, begging the intruders not to harm them. According to Perry, the sound of sirens prompted the intruders to leave, but before they did, they stole a necklace off her neck. Perry estimated the ordeal lasted about 45 minutes.

{¶ 10} Bowers testified he was watching TV in the basement with C.M. and K.M. on the night in question. He heard Collins enter the house and tell Perry not to move or say anything. Suddenly, a masked man descended the stairs into the basement, pointed an AK-47 at him, and told him to lay on the ground. He testified the intruder said, "We seen the paper. We know he got his money. Where is it at?" (Tr. Vol. II, 302.) Bowers laid down on the ground and, at different points, the intruder put the gun to Bowers' back and pointed the gun at his head. The intruder also verbally abused and manhandled C.M. and K.M. According to Bowers, a female intruder joined the man with the gun in the basement, threatened the occupants, and consulted about what items were available to steal. Ultimately, the intruders took cell phones and a small amount of cash from the occupants of the basement. The intruders also stole the basement TV. Bowers testified that he heard sirens and that is when the intruders decided to flee.

{¶ 11} C.M. confirmed that he was in the basement with K.M. and Bowers when a masked man carrying an AK-47 came downstairs. The intruder ordered the occupants of the basement to the ground and put the gun to C.M.'s head. According to C.M., the intruder forced him to lay on top of Bowers, and K.M. to lay on top of him, such that they were stacked three people high while the assailant held the gun on them. The male assailant ransacked the basement, and a female intruder joined him at one point. In addition to stealing his cell phone, C.M. confirmed that the intruders stole the basement TV. C.M. testified they heard sirens and the intruders left.

{¶ 12} K.M. testified she was in the basement with C.M. and Bowers. She stated that a masked man descended into the basement carrying an AK-47. He forced her to the floor, put his foot on her head, and put the gun in her back. The intruder then forced her and C.M. to lay on top of Bowers while holding the gun on them. She thought he was going to shoot all three of them at the same time. According to K.M., the intruder said, "Where's the settlement? * * * Where's the money?" (Tr. Vol. II, 356.) The male intruder ransacked the basement. At one point a female intruder joined him downstairs, consulted with the male, and verbally abused the occupants. K.M. testified the intruders stole her cell phone and left her, C.M., and Bowers stacked up when they fled.

{¶ 13} Perdue was sitting on the couch in the front room, on the first floor, holding her three-month-old daughter, J.B. She testified that an intruder came into the room and

told her not to move, but allowed her to remain sitting upright.  Perdue heard Collins address appellant as "Erik," while appellant had Collins on the floor in the kitchen.  (Tr. Vol. II, 419.)  She also heard appellant ask Collins, "Where's your settlement?"  (Tr. Vol. II, 367.)  According to Perdue, appellant then entered and searched the room where she was sitting.  She saw appellant's face and described him for the jury: "White male, bald head, * * * reddish-colored beard [on his chin]."  (Tr. Vol. II, 367-68.)  She testified appellant was carrying a silver revolver.  Later, she saw appellant carry a TV from a bedroom out the front door.  Perdue saw two additional male intruders and one female intruder wearing masks.   They ransacked other parts of the house and removed items from the residence.  She witnessed the robbers exit the house, and she called police.  Perdue estimated the event lasted 25-30 minutes.

{¶ 14} The Columbus Police Department responded to the incident, and three police officers testified for the state at trial.  The first responder, Officer Mary Praither, testified she was dispatched to a reported home invasion at 909 Lawndale Avenue on October 28, 2012.  When she arrived, she observed the house to be in disarray and the occupants to be shaking and scared.  She noted a TV was missing from a stand in the front room and the bedrooms were ransacked.  Detective Brian Boesch testified Collins told him appellant was one of the perpetrators.  Collins told Detective Boesch that he knew appellant, appellant was not wearing a mask, and he provided Detective Boesch with appellant's first name.  Collins described appellant as a bald, white male, with a long goatee.  Others were interviewed, and with the information collected, Detective Boesch put together photo arrays.  Detective Boesch testified that a particular photo array contained six pictures of white males, with goatees, who were either bald or had closely cut hair.  On November 5, 2012, Detective Todd Cress testified he brought two copies of that photo array to Collins' house.  Detective Cress showed the photo array to Collins and Perdue separately, and they both selected appellant's picture indicating he entered their home with a gun and robbed them.

{¶ 15} Appellant did not call any witnesses to testify at trial.  Appellant's co-defendant called one witness, but that witness admitted he had no firsthand knowledge regarding the events of October 28, 2012.  Appellant's co-defendant also testified on her own behalf and denied being involved in the incident.  The parties stipulated, in relation

to the having weapons while under disability charge, that appellant was previously convicted of burglary, a felony offense of violence, in 2012.

{¶ 16} Appellant was convicted of aggravated burglary, having weapons while under disability, and multiple counts of aggravated robbery, robbery and kidnapping, with each containing specifications. On July 26, 2013, the trial court filed a judgment entry memorializing appellant's sentence. On August 23, 2013, appellant appealed to this court.

{¶ 17} On March 5, 2014, the state filed a motion for leave to supplement the appellate record with: (1) the state's January 16, 2014 motion to correct the trial court record, (2) the transcript of the proceedings before the trial court regarding that motion, and (3) the trial court's March 4, 2012 entry journalizing those proceedings. The state's motion was unopposed. We granted the same on March 18, 2014, after which the appellate record was supplemented.

## II. ASSIGNMENTS OF ERROR

{¶ 18} Appellant presents this court with the following assignments of error to review:

> I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF AGGRAVATED BURGLARY; AGGRAVATED ROBBERY; KIDNAPPING AND HAVING WEAPONS UNDER DISABILITY AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY IMPROPERLY SENTENCING HIM TO CONSECUTIVE TERMS OF INCARCERATION IN CONTRAVENTION OF OHIO'S SENTENCING STATUTES.
>
> III. APPELLANT WAS DEPRIVED OF HIS RIGHT TO BE PRESENT AND TO THE PRESENCE AND ASSISTANCE OF HIS COUNSEL DURING A CRITICAL STAGE OF HIS JURY TRIAL, AND HIS RIGHT TO DUE PROCESS AND A FUNDAMENTALLY FAIR JURY TRIAL AS REQUIRED BY

THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTIONS FIVE, TEN AND SIXTEEN OF THE OHIO CONSTITUTION AND CRIMINAL RULE 43(A).

## III. DISCUSSION

{¶ 19} Under appellant's first assignment of error, he asserts his convictions were not supported by sufficient evidence and that his convictions were against the manifest weight of the evidence produced at trial. Appellant focuses on the testimony of Collins. Appellant characterizes Collins as a man of "dubious character"; a convicted felon who was still engaging in criminal activity at the time of the October 28, 2012 incident. (Appellant's brief, at 2.) Collins identified appellant as the unmasked perpetrator. Thus, according to appellant, the state's "identification was based on the testimony of a convicted and unreformed felon. Collins' testimony * * * was suspect and not worthy of belief by any rational jury." (Appellant's brief, at 4.) Based on these contentions, it is appellant's stance that the state failed to sustain its burden of proof at trial. We disagree.

{¶ 20} "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded by constitutional amendment on other grounds as recognized in *State v. Smith*, 80 Ohio St.3d 89, 102 (1997).

{¶ 21} "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386-87. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting

testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). This discretionary authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 22} Appellant's argument under his first assignment of error is that the jury should not have accepted Collins' identification of appellant because Collins was not credible. Appellant's argument ignores the other identification evidence produced at trial. Additionally, the argument lacks merit. Collins' criminal history was disclosed to the jury and the jury was aware of his prior dealings with appellant. Whether or not to believe Collins was well within the purview of the jury. "As the finder of fact, the jury is in the best position to weigh the credibility of testimony by assessing the demeanor of the witness and the manner in which he testifies, his connection or relationship with the parties, and his interest, if any, in the outcome." *State v. Moore*, 10th Dist. No. 11AP-1116, 2013-Ohio-3365, ¶ 10. The jury was free to accept all, a part, or none of Collins' testimony. *Id.*; *State v. Vasquez*, 10th Dist. No. 13AP-366, 2014-Ohio-224, ¶ 57, citing *State v. Matthews*, 10th Dist. No. 11AP-532, 2012-Ohio-1154, ¶ 46 ("As trier of fact, the jury was free to believe or disbelieve all or any of the testimony presented.").

{¶ 23} After considering appellant's argument and reviewing the entire record, we determine a rational jury could have found the essential elements of the crimes proven beyond a reasonable doubt. We do not find the evidence weighs heavily against appellant's convictions, the jury clearly lost its way, or a manifest miscarriage of justice occurred. The jury was in the best position to determine the credibility of the testimony presented, and we decline to substitute our judgment for that of the jury. Accordingly, appellant's first assignment of error is overruled.

{¶ 24} Under appellant's second assignment of error, he argues the trial court erred by not complying with statutory mandates governing the imposition of consecutive sentences. Specifically, appellant contends the trial court failed to comply with R.C.

2929.14(C)(4) before imposing consecutive sentences because the court did not find "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(C)(4). Our review of the record indicates otherwise.

{¶ 25} Preliminarily, we note appellant did not object to his sentence; thus, he has forfeited all but plain error. *See* Crim.R. 52(B); *State v. Wilson*, 10th Dist. No. 12AP-551, 2013-Ohio-1520, ¶ 8. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "To constitute plain error, the error must be obvious on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection." *State v. Gullick*, 10th Dist. No. 13AP-26, 2013-Ohio-3342, ¶ 3, citing *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist.1995). We notice plain error " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. "The burden of demonstrating plain error is on the party asserting it." *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 17.

{¶ 26} Generally, we review felony sentences to determine " 'whether clear and convincing evidence establishes that a felony sentence is contrary to law.' " *State v. Ayers*, 10th Dist. No. 13AP-371, 2014-Ohio-276, ¶ 8, quoting *State v. Allen*, 10th Dist. No. 10AP-487, 2011-Ohio-1757, ¶ 19. "A sentence is contrary to law when the trial court failed to apply the appropriate statutory guidelines." *Id.*, citing *State v. Burton*, 10th Dist. No. 06AP-690, 2007-Ohio-1941, ¶ 19.

{¶ 27} R.C. 2929.14(C)(4) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 28} R.C. 2929.14(C)(4) requires the trial court to make three findings before imposing consecutive sentences: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) that one of the subsections (a), (b), or (c) apply. *State v. Roush*, 10th Dist. No. 12AP-201, 2013-Ohio-3162, ¶ 76. "The trial court is not required to give reasons explaining these findings, nor is the court required to recite any 'magic' or 'talismanic' words when imposing consecutive sentences." *Id.*, citing *State v. Farnsworth*, 7th Dist. No. 12 CO 10, 2013-Ohio-1275, ¶ 8. "Nevertheless, the record must reflect that the court made the findings required by the statute." *Id.*

{¶ 29} During sentencing, the trial court made the following pertinent remarks:

Quite frankly, 2929.14 of the Ohio Revised Code's a little awkward at times with some of its verbiage, so I think that's important in finding that consecutive sentences are appropriate here. I need to talk a little bit about some issues here.

First, there is no doubt that he was on probation when these offenses occurred, being one of the factors under 2929.14. Whether he was on Federal parole is basically secondary. He still was under paper to me, being one of the qualifiers. I think it's important to note that on the record.

> Also, to not give consecutive sentences would demean the seriousness of the offense based upon the weighing of the factors that are involved here. The harm was so great that a single term does not adequately reflect the seriousness of the conduct, and his criminal history shows that consecutive sentences are needed to protect the public, and that's the big issue here.
>
> * * *
>
> The sentence I give today I feel is appropriate to protect the public, but if I had all the specifications, then I think it would be disproportionate to the needs of the public, so that's why I have had the State elect on the gun specs of Count 1 and 3.

(Tr. Vol. V, 1009-10.)

{¶ 30} The trial court made all the findings required by R.C. 2929.14(C)(4). There is no dispute over whether the trial court found consecutive sentences were necessary to protect the public from future crime or to punish appellant, or whether the trial court found that one of the subsections (a), (b), or (c) applied. We find the record reflects those findings were made. Appellant's only complaint is that the court neglected to find that consecutive sentences were not disproportionate to the seriousness of his conduct and to the danger he poses to the public. We disagree. The trial court specifically discussed the proportionality of appellant's sentence, finding it was not disproportionate under the circumstances. The court further identified as sentencing factors appellant's criminal history, the seriousness of his offenses, the great harm he caused, and the need to protect the public. It is clear the trial court found appellant was a danger to the public without saying the word "danger."

{¶ 31} We are reminded that a trial court is not required to use talismanic words in order to comply with R.C. 2929.14(C)(4). However, it must be clear from the record that the findings required by the statute were made. *State v. Revels*, 10th Dist. No. 12AP-831, 2014-Ohio-795, ¶ 10, citing *State v. Boynton*, 10th Dist. No. 12AP-975, 2013-Ohio-3794, ¶ 9; *State v. Marton*, 8th Dist. No. 99253, 2013-Ohio-3430, ¶ 13; *Roush* at ¶ 76. In this case, we find the record clearly reflects the trial court made all the required findings under R.C. 2929.14(C)(4) before imposing consecutive sentences.

{¶ 32} Appellant also asserts under his second assignment of error that "the lack of reasons cited by the trial court in imposing consecutive sentences" amounts to error. (Appellant's brief, at 10.) We disagree. We have previously considered and rejected the notion that a trial court must provide reasons for imposing consecutive sentences, in addition to making the findings required by R.C. 2929.14(C)(4). *State v. Wilson*, 2013-Ohio-1520, ¶ 19; *see also Roush* at ¶ 76. Appellant also makes vague claims such as "the trial court sentenced [him] to consecutive sentences * * * without appropriate justification," and, "[s]imply stated, the record in this case does not justify the trial court's sentence." (Appellant's brief, at 5-6; 7.) We cannot agree. Appellant was convicted for committing numerous violent felonies and, as explained above, the trial court complied with R.C. 2929.14(C)(4) before imposing consecutive sentences. We do not find a departure from statutory guidelines or otherwise notice plain error in appellant's sentence. Accordingly, appellant's second assignment of error is overruled.

{¶ 33} Under appellant's third assignment of error, he argues that error occurred because he was not present during a critical portion of his trial in contravention of his rights. Appellant relies on the fact that the record originally certified to this court does not indicate whether he was present in the courtroom, at a particular point, when the trial court addressed the jury while the jury was deliberating.

{¶ 34} The state responded by filing a motion to correct the record with the trial court pursuant to App.R. 9(E). The trial court held a hearing on the motion, at which appellant was present. The proceeding was held before the same judge that presided over appellant's trial and addressed the jury. The judge heard from appellant's trial counsel, his appellate counsel, the assistant prosecutor that represented the state at trial, and the assistant prosecutor representing the state on appeal. The clerk of courts supplemented this court's record with a transcript of the motion hearing.

{¶ 35} Most notably, appellant's trial counsel stated during the hearing:

> Your Honor, [appellant] was present during the Howard Charge. We had discussions. I think the record will reflect that I had spoken with [appellant] in terms of objecting to the Howard Charge.

(Mar. 3, 2014 Tr. 6.)[1]   Additionally, the consensus between the trial judge and the assistant prosecutor that represented the state at trial was that appellant was present at the time in question.  The trial court granted the state's motion and found, "[i]nsofar as the State seeks clarification of whether [appellant] was present in the courtroom[,] * * * this Court finds that [appellant] was present in the courtroom."  (Mar. 4, 2014 Judgment Entry.)

{¶ 36} We find the above proceedings conducted pursuant to App.R. 9(E) render appellant's third assignment of error meritless.  Accordingly, appellant's third assignment of error is overruled.

## IV.  CONCLUSION

{¶ 37} Having overruled appellant's three assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BROWN and DORRIAN, JJ., concur.

---

[1] A discussion of the "Howard Charge" referred to by appellant's trial counsel is not necessary for the resolution of appellant's third assignment of error.  Thus, in the interest of brevity, this court will not elaborate.  *See State v. Howard*, 42 Ohio St.3d 18 (1989).