[Cite as *State v. Jackson*, 2015-Ohio-5114.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                                    :

        Plaintiff-Appellee,                          :              No. 14AP-748
                                            (C.P.C. No. 12CR-5675)
v.                                                               :
                                            (REGULAR CALENDAR)
Michael A. Jackson, II,                                          :

        Defendant-Appellant.                         :

D E C I S I O N

Rendered on December 10, 2015

*Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

*Todd W. Barstow*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Michael A. Jackson, II ("appellant"), appeals the August 25, 2014 judgment of the Franklin County Court of Common Pleas convicting him, pursuant to a jury verdict, and imposing sentence. For the reasons that follow, we affirm the conviction, but reverse the sentence and remand for resentencing.

**I. Facts and Procedural History**

{¶ 2} On October 26, 2013, Dylan Stewart and his girlfriend, Dominae Gaston, were looking for a place to spend the night. Stewart and Gaston arrived at the home of Modais Davis, appellant's brother. At approximately 10 p.m., Davis drove Stewart and Gaston to appellant's mother's house on Carbondale Road in Columbus, where appellant, along with his girlfriend and children, resided in the basement.

{¶ 3} When Stewart arrived at the house with Gaston and Davis, appellant and several members of his family were present at the house. Stewart, Gaston, and Davis

walked into the basement to meet appellant.  Stewart stated that he felt "weird" when he went to the basement based on the behavior of Davis, who was "laughing and giggling about little things."  (Tr. Vol. I, 165.)  Stewart told Gaston to "run if something happened." (Tr. Vol. I, 166.)

{¶ 4}  Once Stewart entered the basement, he attempted to wish appellant a happy birthday, but was attacked by appellant and Davis.  Gaston ran past Stewart, sat in a corner, and began crying.  Davis fired a shot that grazed Stewart's head, causing him to fall to the ground.  As Stewart attempted to stand, Davis shot him in the leg.

{¶ 5}  According to Stewart, after Davis shot him, appellant removed a shotgun from a rack on the basement wall and pointed the gun at Stewart, saying "Is this what you want?" (Tr. Vol. I, 181.)  Appellant held Stewart and Gaston at gunpoint while Davis brought a tarp from another room.  Davis told Stewart and Gaston that they were going to die and ordered Gaston to step onto the tarp.  Gaston cried and shook her head.  Davis asked Gaston if she wanted to die, and when she said she did not, he ordered her onto the tarp. Gaston complied, walking onto the tarp with her hands on her face.  When Gaston knelt down on the tarp, Davis put the gun to her head and pulled the trigger, killing her. Appellant went upstairs and exited the house.

{¶ 6}  Davis called his girlfriend, Shantina Edwards, and asked for her help.  When she agreed, Davis left the Carbondale residence and picked up Edwards.  Stewart remained alone in the Carbondale residence while Davis was with Edwards. Davis drove Edwards to Walmart and instructed her to purchase duct tape and a plastic tarp.  Once Edwards and Davis returned to the Carbondale residence with the items, she and Davis wrapped Gaston's body in the plastic wrap.

{¶ 7}  At some point, while Davis and Edwards were outside the house, Stewart went to a neighboring house and sought aid.  However, the neighbor refused to open the door and allow Stewart to call for help. Stewart returned to the Carbondale residence and, upon remembering that Gaston had been carrying a cell phone, called 911.  Stewart reported that he had been shot, described the general area in which the house was located, and hung up.

{¶ 8}  At approximately 10:45 p.m. that night, Columbus police received a report of a male who had been shot in the Carbondale area.  When police arrived, they were

unable to locate the caller and discontinued the search. At 12:10 a.m., Columbus police were dispatched to the Carbondale residence upon receiving a tip that a homicide had been committed there. Upon arriving at the home, officers found Davis and Edwards upstairs and Stewart downstairs with a plastic bag taped over the gunshot wound on his leg. Davis and Edwards told police that Stewart was the victim of a drive-by shooting.

{¶ 9} Paramedics removed Stewart from the home and secured him in an ambulance. Once he was secured with the ambulance doors closed, Stewart became "absolutely hysterical" and repeatedly told the paramedics that "[t]hey killed her." (Tr. Vol. I, 129.) Eventually, Stewart stated that his girlfriend's body was wrapped up in the basement. The paramedics alerted police officers regarding Stewart's statements. At that point, Davis fled the residence, later committing suicide.

{¶ 10} In his testimony, appellant admitted that he was "angry" at Stewart because he suspected that Stewart stole from him and Davis. (Tr. Vol. III, 566.) Appellant agreed that both he and Davis "wanted to get" Stewart. (Tr. Vol. III, 581.) Appellant claimed that, although he fought Stewart alongside Davis, he had nothing to do with Davis's actions in shooting Stewart and Gaston. Appellant further admitted that he struck Stewart in the face, but said that he only heard the shot that struck Stewart in the leg. Appellant claimed that he left the residence with his family when he saw that Stewart was bleeding. Appellant did not call police immediately, but turned himself in after hearing about the incident on the news.

{¶ 11} On November 7, 2012, a Franklin County Grand Jury indicted appellant, charging him with six criminal counts, with all counts containing three-year firearm specifications. On August 25, 2014, the trial court filed a judgment entry reflecting the findings of the jury following trial and imposing sentence on appellant. The jury found appellant not guilty of two counts of aggravated murder, but guilty of one count of murder, two counts of kidnapping, and one count of felonious assault. The jury also found appellant guilty of the three-year firearm specifications attached to each count, except that, for the offense of felonious assault, the jury found appellant guilty of a one-year firearm specification.

{¶ 12} The trial court sentenced appellant to 15 years to life for murder, 10 years for the first count of kidnapping, 5 years for the second count of kidnapping, and 5 years

for felonious assault. The court also sentenced appellant to three three-year sentences for three firearm specifications, and a one-year sentence for the firearm specification for felonious assault. The court ordered the sentence for murder and attached a firearm specification to be served consecutively to the other sentences and attached specifications. The court also ordered the sentences for the counts of kidnapping and attached firearm specifications along with the sentence for felonious assault to be served concurrently with each other, but ordered the one-year firearm specification to run consecutively to the sentences for murder and kidnapping, resulting in a total sentence of 29 years to life.

## II. Assignments of Error

{¶ 13} Appellant appeals assigning the following two errors for our review:

> I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF MURDER, KIDNAPPING AND FELONIOUS ASSAULT AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY IMPROPERLY SENTENCING HIM TO CONSECUTIVE TERMS OF INCARCERATION IN CONTRAVENTION OF OHIO'S SENTENCING STATUTES.

### A. First Assignment of Error—Sufficiency and Manifest Weight

{¶ 14} In his first assignment of error, appellant asserts that his convictions were against the manifest weight of the evidence and not supported by sufficient evidence.

{¶ 15} We first review appellant's claim that his convictions were insufficiently supported by the evidence. Sufficiency of evidence is a "legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When judging the sufficiency of the evidence to support a criminal conviction, an appellate court must decide if, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d

259 (1991), paragraph two of the syllabus.  Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. *Id.*

{¶ 16} "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25. *See also Thompkins* at 387 ("Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.").  An appellate court must review the entire record, weighing the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  This authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175.

{¶ 17} "[A] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Spires,* 10th Dist. No. 10AP-861, 2011-Ohio-3312, ¶ 18, citing *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21.  The trier of fact is free to believe or disbelieve any or all of the testimony.  *Id.* at ¶ 18, citing *State v. Jackson*, 10th Dist. No. 01AP-973, 2002-Ohio-1257.  Thus, although an appellate court acts as a "thirteenth juror" in considering the weight of the evidence, it must give great deference to the fact finder's determination of witness credibility. *Spires* at ¶ 18, citing *State v. Covington*, 10th Dist. No. 02AP-245, 2002-Ohio-7037, ¶ 22.

{¶ 18} Although appellant's assignment of error attacks both the sufficiency of evidence and the manifest weight of the evidence, appellant's only argument contends that the witnesses who testified against him were not credible.  However, when examining the sufficiency of the evidence, appellate courts "do not assess whether the prosecution's evidence is to be believed, but whether, if believed, the evidence supports the conviction."

*State v. Williams*, 10th Dist. No. 14AP-546, 2015-Ohio-1136, ¶ 27, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80. Thus, viewing the evidence in a light most favorable to the prosecution, we consider whether any rational trier of fact could have found the essential elements of appellant's crimes proven beyond a reasonable doubt.

{¶ 19} Appellant was convicted of one count of murder, two counts of kidnapping, and one count of felonious assault, all with firearm specifications. The state argues that it proved appellant was complicit with Davis in killing Gaston and shooting Stewart. The state also argues that appellant's holding Stewart and Gaston at gunpoint constituted kidnapping.

{¶ 20} "Under the principle of complicity or accomplice liability, an individual may be found guilty if he solicits, aids, abets or conspires with another individual to commit an offense and shares the criminal intent of an individual who commits the principal offense." *State v. Horton*, 10th Dist. No. 13AP-855, 2014-Ohio-2785, ¶ 8, citing *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "The accomplice's intent may be inferred from the circumstances surrounding the crime." *Id.* at ¶ 8, citing *Johnson* at syllabus. The prohibition against complicity is codified in R.C. 2923.03, which provides as follows:

> (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> (1) Solicit or procure another to commit the offense;
>
> (2) Aid or abet another in committing the offense[.]

{¶ 21} Stewart testified that appellant assaulted him alongside Davis and was present as Davis shot him. Further, Stewart testified that appellant held him and Gaston at gunpoint, preventing them from leaving while Davis retrieved a tarp and proceeded to shoot and kill Gaston. Thus, appellant's actions supported Davis as he shot Stewart and killed Gaston. This evidence, if believed, was sufficient to convict appellant in the kidnapping of Stewart and Gaston, and as an accomplice in the felonious assault of Stewart and the murder of Gaston. As a result, we find that appellant's convictions were supported by sufficient evidence because, viewing the evidence in a light most favorable to

the prosecution, a rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. *Jenks* at paragraph two of the syllabus.

{¶ 22} Next, we consider whether appellant's convictions were against the manifest weight of the evidence. Appellant argues that Stewart's testimony was not credible because Davis did not kill Stewart although he had the opportunity to do so. Appellant also questions Stewart's credibility because he tried to escape and seek help while he was left alone at the house, but did not mention that Gaston had been killed until he was secured in the ambulance.

{¶ 23} Although appellant's argument attacks the credibility of Stewart, it does not render his testimony inherently unreliable and unworthy of belief. Here, it was reasonable for the jury to credit Stewart's testimony and discredit the testimony of appellant. Appellant admitted in his testimony that he lied to the police when he said there were no guns in the house. Appellant testified that he in fact handled the shotgun in the basement on the night in question, but denied pointing it at Gaston and Stewart, claiming that he only moved it from the wall rack to a closet. Appellant also admitted at trial to lying to police about punching Stewart and about the circumstances under which he learned of Gaston's murder. Further, appellant never called 911 to report the incident. A conviction is not against the manifest weight of the evidence merely because the jury believed the testimony offered by the prosecution's witnesses. *Spires* at ¶ 23, citing *State v. Smith*, 10th Dist. No. 04AP-726, 2005-Ohio-1765. Indeed, " 'the testimony of one witness, if believed by the jury, is enough to support a conviction.' " *Williams*, 2015-Ohio-1136, at ¶ 27, quoting *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42. Thus, we cannot say that, in crediting Stewart's version of events over appellant's, the jury clearly lost its way. *Spires* at ¶ 23; *State v. Taylor*, 10th Dist. No. 14AP-254, 2015-Ohio-2490, ¶ 37.

{¶ 24} Appellant also challenges the testimony of Edwards because she testified pursuant to a plea agreement with the state. However, the jury was aware of Edwards' plea agreement and was therefore in the best position to weigh that fact in determining her credibility. *State v. Barber*, 10th Dist. No. 14AP-557, 2015-Ohio-2653, ¶ 21, citing *State v. Hudson*, 10th Dist. No. 06AP-335, 2007-Ohio-3227, ¶ 17. Therefore, we find that it was reasonable for the jury to credit Edwards' testimony.

{¶ 25} Thus, considering the credibility of the witnesses and the evidence presented at trial, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *See State v. Hillman*, 10th Dist. No. 14AP-252, 2014-Ohio-5760, ¶ 50, citing *State v. Vencill*, 10th Dist. No. 11AP-1050, 2012-Ohio-4419, ¶ 13-14.

{¶ 26} Accordingly, we overrule appellant's first assignment of error.

**B. Second Assignment of Error—Consecutive Sentence Findings**

{¶ 27} In his second assignment of error, appellant asserts that the trial court erred by failing to state findings required for the imposition of consecutive sentences under R.C. 2929.14(C)(4).

{¶ 28} R.C. 2929.14(C)(4) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 29} Thus, pursuant to R.C. 2929.14(C)(4), in order to impose consecutive terms of imprisonment, the trial court is required to make at least three distinct findings: "(1)

that consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of the subsections (a), (b) or (c) applies." (Emphasis deleted.) *State v. Price*, 10th Dist. No. 13AP-1088, 2014-Ohio-4696, ¶ 31, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177.  A trial court seeking to impose consecutive sentences must make the findings required by R.C. 2929.14(C)(4) at the sentencing hearing and also incorporate such findings into its sentencing entry. *Bonnell* at ¶ 37.  However, the trial court need not state reasons to support its findings, nor is the court "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.  See also State v. Ayers*, 10th Dist. No. 13AP-371, 2014-Ohio-276, ¶ 12.   "[A] word-for-word recitation of the language of the statute is not required," but where "the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29.

{¶ 30} We first note that, because appellant failed to object to the imposition of consecutive sentences at the sentencing hearing, our review is limited to consideration of whether the trial court committed plain error.  *Ayers* at ¶ 7.  Under Crim.R. 52(B), " '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'  'To constitute plain error, the error must be obvious on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection.' "  *State v. Jones*, 10th Dist. No. 14AP-80, 2014-Ohio-3740, ¶ 11, quoting *State v. Gullick*, 10th Dist. No. 13AP-26, 2013-Ohio-3342, ¶ 3, citing *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist.1995).

{¶ 31} The state contends that we should not reverse for resentencing because the court was "well aware of the facts and had ample information to justify the sentence," and because the outcome would not have been otherwise based on the facts adduced at trial. (Appellee's Brief, 16.)   However, "[w]e have previously found that when the record demonstrates that the trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences on multiple offenses, 'appellant's

sentence is contrary to law and constitutes plain error.' " *Ayres* at ¶ 15, quoting *State v. Wilson*, 10th Dist. No. 12AP-551, 2013-Ohio-1520, ¶ 18.

{¶ 32} Here, the trial court failed to make the findings required by R.C. 2929.14(C)(4) at the sentencing hearing. This conclusion is supported by the trial court's failure to journalize consecutive sentence findings into the sentencing entry. *State v. Williams*, 10th Dist. No. 13AP-552, 2013-Ohio-4891, ¶ 6. Although the trial court stated that it "weighed the factors as set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14," we have previously held that the trial court must incorporate statutory findings into the sentencing entry after properly making those findings at the sentencing hearing. (Aug. 25, 2014 Judgment Entry.) *Hillman* at ¶ 71. *See Bonnell* at ¶ 30 ("A trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry *after properly making those findings at the sentencing hearing* does not render the sentence contrary to law."). (Emphasis added.) Therefore, because the record reflects that the " 'trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences on multiple offenses, "appellant's sentence is contrary to law and constitutes plain error." ' " *State v. J.H.S.*, 10th Dist. No. 14AP-399, 2015-Ohio-254, ¶ 17, quoting *Ayers* at ¶ 15, quoting *Wilson*, 2013-Ohio-1520, at ¶ 18.

{¶ 33} Accordingly, we sustain appellant's second assignment of error and remand this matter to the trial court for it " 'to consider whether consecutive sentences are appropriate, pursuant to R.C. 2929.14(C)(4), and, if so, to make the proper findings on the record at the sentencing hearing and incorporate those findings into its sentencing entry.' " *J.H.S.* at ¶ 18, quoting *Jones* at ¶ 18, citing *Bonnell*.

## III. Disposition

{¶ 34} Having overruled appellant's first assignment of error and sustained appellant's second assignment of error, we affirm the conviction, but reverse the sentence and remand to the Franklin County Court of Common Pleas for resentencing in compliance with this decision and R.C. 2929.14(C)(4).

*Judgment affirmed in part, reversed in part,*
*and cause remanded with instructions.*

BROWN, P.J., and KLATT, J., concur.

———————————