[Cite as *State v. Grace*, 2019-Ohio-2016.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

      Plaintiff-Appellee,                     :

                                                  No. 17AP-709

v.                                                   :       (C.P.C. No. 16CR-1385)

Marctarious K. Grace,                     :       (REGULAR CALENDAR)

      Defendant-Appellant.                  :

---

D E C I S I O N

Rendered on May 23, 2019

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

**On brief:** *W. Joseph Edwards*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

PER CURIAM

{¶ 1} Defendant-appellant, Marctarious K. Grace, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas, pursuant to jury verdicts finding him guilty of two counts of aggravated murder, one count of murder, and other felony charges. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} The charges against Grace arose from a shooting that occurred on March 4, 2016 in the parking area of the Express Market convenience store on East Fifth Avenue in Columbus, Ohio. On that afternoon, Judith Huntley drove to the Express Market with K'Shon Crawley and Raquan Holloway to pay her cell phone bill. Also in Huntley's car were her children, De.F., Da.F., and S.F. Huntley and Crawley went into the Express Market; Holloway and the children waited in the backseat of the car. While Huntley and Crawley

were in the Express Market, an individual fired multiple gunshots at Huntley's car. De.F. was struck in the head by a bullet and later died. Da.F. was grazed on the leg by a bullet and S.F. was injured by glass shattered by the gunshots. Holloway was struck by a bullet in the left buttock. Holloway identified Grace as the shooter for police at the hospital following the incident. Grace was arrested later that same day.

{¶ 3} Grace was charged with two counts of aggravated murder and one count of murder with respect to the death of De.F., and three counts each of attempted murder and felonious assault relating to Da.F., S.F., and Holloway. There were firearm and criminal gang activity specifications associated with each of those charges. Grace was also charged with one count of participating in a criminal gang, with a firearm specification. A jury trial was conducted on all charges.

{¶ 4} Plaintiff-appellee, State of Ohio, presented testimony from multiple Columbus police officers that Grace was a member of the Atcheson Crip Gangsters ("ACG"). There was also testimony that Crawley and Holloway were members of or affiliated with the Milo Boys Gang ("Milo Boys"), also referred to as the Milo-Grogan Boys, and there was a rivalry between ACG and the Milo Boys. A Columbus police officer testified it was believed on the streets that Crawley was responsible for killing the younger sister of a member of ACG known as "Capone," and this was part of the reason for the ongoing dispute between ACG and the Milo Boys.

{¶ 5} Holloway testified that Grace, whom he knew as "Pan," committed the shooting and identified Grace in the courtroom as the individual he knew as Pan. Holloway testified he saw Grace standing beside the Express Market holding a gun before he began firing, and that he recognized Grace's tattoo. Huntley testified she and Crawley ran out of the Express Market after hearing gunfire, and in the aftermath of the shooting she heard Holloway tell Crawley that "Pan and them" committed the shooting. Huntley took this to mean Grace and an individual named Steve Henderson, whom she knew as "Tana." Huntley identified Grace in the courtroom as Pan.

{¶ 6} The state also presented testimony from the owner of an automobile body shop located across the street from the Express Market, who testified he was in the shop on the afternoon of March 4, 2016 when he heard gunshots and went to the window to see what was happening. The body shop owner saw an individual in a red or maroon hoodie

disappear around the Express Market building and then saw a white Nissan Murano exit from behind the store.  Although he did not see the individual in the hoodie firing a gun, he testified the individual in the hoodie was the only person out in the parking area.  City cameras from the area showed a white Nissan Murano circling around the Express Market around the time Huntley's car pulled into the parking lot.  None of the cameras showed the shooter in the act of firing.  The day after the shooting, police located and impounded a white Nissan Murano that belonged to the sister of another member of the ACG, Terrell Hansard, known as "Teebody."  There was also testimony that when Grace was arrested his hands tested positive for gunshot residue.

{¶ 7}   The state also presented testimony from Justin Smotherman, who testified he was a member of ACG and knew Grace.  Smotherman testified Grace had the letter "K" tattooed between his eyebrows, and that several members of ACG had similar "K" tattoos on their foreheads.  Smotherman stated Grace went by multiple nicknames, including "Pan" and "Mandown."  Smotherman testified that around mid-day on March 4, 2016, he was near Grace's house and saw a white Nissan Murano parked outside.  He had previously seen Hansard driving that vehicle.  When Smotherman arrived, he saw Grace, Hansard, and two other individuals sitting in the white Murano.  Smotherman went into another house nearby that was frequented by members of ACG.  Later that day, Grace came to the house where Smotherman was hanging out.  Grace was wearing different clothes than when Smotherman had seen him earlier in the day, although Smotherman could not recall exactly what Grace was wearing. Smotherman testified Grace told him he had seen Crawley, Holloway, and Huntley at a store and had "[t]ore the car up," meaning he had shot it.  (Tr. Vol. IV at 389.)  Grace told Smotherman that Holloway was in the backseat of the car with some kids.

{¶ 8}   The state also introduced recordings of two phone calls Grace made to an unidentified woman while he was in jail. At the beginning of the calls, Grace refers to himself as "Mandown."  During one of the calls Grace told the woman to tell "Teebody" to get rid of the white truck.  At various points during the two calls, Grace stated he did not commit the shooting.  However, at other times during the calls, Grace stated that if he went down for the shooting he would tell exactly why he did it. In the jail calls, Grace referred to

the killing of Capone's sister and indicated that was the reason he did not care if other children were killed.

{¶ 9} At the close of trial, the jury found Grace guilty on all charges and specifications. The trial court conducted a sentencing hearing on September 11, 2017. The court found the second aggravated murder conviction and the murder conviction related to the killing of De.F. merged with the first aggravated murder conviction for purposes of sentencing. The court also found the felonious assault convictions merged with the attempted murder convictions with respect to each of the other victims. The court imposed a total sentence of life imprisonment plus 65 years.

## II. Assignment of Error

{¶ 10} Grace appeals and assigns the following assignment of error for our review:

> THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. Discussion

{¶ 11} Grace asserts in his sole assignment of error that the jury verdicts were not supported by sufficient evidence and were against the manifest weight of the evidence. "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. *Id.* "The testimony of a single witness, if believed by the finder of fact, is sufficient to support a criminal conviction." *State v. Booker*, 10th Dist. No. 15AP-42, 2015-Ohio-5118, ¶ 18.

{¶ 12} "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest

weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25.

> When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 12, citing *Thompkins* at 387. This authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). In conducting our review of the evidence, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 13} On appeal, Grace only challenges the evidence identifying him as the shooter and does not challenge the evidence related to any other elements of any of the offenses. Therefore, we will restrict our review to the sufficiency and weight of the evidence establishing that Grace was the shooter.

{¶ 14} Holloway testified at trial that Grace was the shooter and that he recognized Grace standing beside the Express Market before he began shooting. Smotherman testified Grace admitted to committing the shooting later the same day. Smotherman also testified he had seen Grace in a white Nissan Murano earlier in the day, which was consistent with the testimony of the body shop owner who saw a white Nissan Murano leaving the Express Market, and the surveillance camera footage, which showed a white Nissan Murano circling the area around the time of the shooting. Grace also made certain statements in the recorded jail calls indicating he committed the shooting, and his hands tested positive for gunshot residue when he was arrested. As noted above, in evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and the

testimony of a single witness, if believed, may be sufficient to support a conviction. *Jenks*, *Booker*. Under this standard, we conclude a rational trier of fact could have found, beyond a reasonable doubt, that Grace was the individual who committed the shooting. Thus, there was sufficient evidence to support the convictions.

{¶ 15} With respect to the weight of the evidence, Grace challenges the credibility of Smotherman, arguing Smotherman was not a member of ACG and only testified in an attempt to reduce his jail sentence in an unrelated matter. There was mixed testimony from various police officers as to whether they knew Smotherman to be among the individuals associated with ACG; however, at least one officer who had compiled extensive information on ACG testified Smotherman was associated with the gang. Smotherman admitted in his testimony that he did not immediately go to police when he learned a child had been killed in the shooting, and did not come forward as a witness until months later. He also admitted he was presently incarcerated on federal charges and hoped to obtain a reduction in his sentence in exchange for testifying. Because Smotherman admitted these facts in his testimony, the jury was aware of this potential motivation for his testimony and could weigh that fact in determining his credibility. *See State v. Powell*, 10th Dist. No. 17AP-808, 2018-Ohio-3944, ¶ 15 ("As the finder of fact, the jury is in the best position to weigh the credibility of testimony by assessing the demeanor of witnesses and the manner in which they testify, their connection or relationship with the parties, and their interest, if any, in the outcome."); *State v. Jackson*, 10th Dist. No. 14AP-748, 2015-Ohio-5114, ¶ 24 ("Appellant also challenges the testimony of Edwards because she testified pursuant to a plea agreement with the state. However, the jury was aware of Edwards' plea agreement and was therefore in the best position to weigh that fact in determining her credibility."). Similarly, to the extent Grace challenges Holloway's credibility or the accuracy of his identification, the jury heard testimony regarding Holloway's purported membership in a rival gang and could weigh that in evaluating his testimony. There was also testimony that Grace and other members of ACG had similar facial tattoos, and the jury could consider that in weighing Holloway's testimony, which expressly referred to Grace's facial tattoo as an identifying characteristic.

{¶ 16} Grace's recorded jail phone calls provided mixed evidence as to whether he was the shooter. At times during the calls he stated he did not commit the shooting.

However, he also instructed the recipient of the calls to tell "Teebody" to get rid of his white truck, suggesting that he knew the white Nissan Murano was implicated in the crime. Further, Grace made statements during the calls indicating that if he was convicted of the charges he would explain why he did it. Although this evidence was inconsistent, "[a] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Hillman*, 10th Dist. No. 06AP-1230, 2008-Ohio-2341, ¶ 15.

{¶ 17} Considering the totality of the evidence, including all reasonable inferences, and weighing the credibility of the witnesses, we cannot conclude the jury clearly lost its way and created a manifest miscarriage of justice in concluding Grace was the individual who shot at Huntley's car. Therefore, we find that the convictions were not against the manifest weight of the evidence.

{¶ 18} Accordingly, we overrule Grace's sole assignment of error.

## IV. Conclusion

{¶ 19} Having overruled Grace's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., DORRIAN and BRUNNER, JJ., concur.